**Affirmed and Opinion Filed August 5, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00543-CR**

**JASON CLAY HUMPHRIES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 20-90634-86-F**

# MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Partida-Kipness

A jury found Appellant Jason Clay Humphries guilty of first-degree sexual assault of a child and assessed punishment at twenty-five years' imprisonment. The trial court entered judgment in accordance with the jury's verdict. In three issues on appeal, Humphries asserts: (1) the trial court erred in denying his motion to quash the indictment; (2) the trial court abused its discretion in denying his motion to quash the jury panel; and (3) the trial court abused its discretion and prejudiced Humphries when it denied his motions for continuance based on the State's late production of discovery. We affirm.

# BACKGROUND

## I.     Factual Background

Humphries began sexually assaulting his biological daughter Faith[1] sometime in the summer of 2015, when Faith was fifteen years old. The first incident occurred when Faith and Humphries were living in an RV park in Sanger. According to Faith, Humphries laid down behind her as she was napping, removed her shorts, and penetrated her vagina with his penis. After this first incident, Humphries engaged in sexual intercourse with Faith on a regular basis, sometimes once or twice per week.

On one occasion, Humphries performed oral sex on Faith at a time when he had a fever blister on his mouth. Shortly thereafter, Faith began having pelvic pain. Humphries took her to the emergency room where Faith was diagnosed with genital herpes. Faith said she had not been sexually active with anyone but Humphries.

Later in the summer of 2015, Humphries and Faith moved to Summer Haven RV Park in Forney. The sexual assaults continued there. Faith recalled one instance where Humphries removed her from her bed, laid her on the floor, removed her shorts, and penetrated her with his penis. Faith tried unsuccessfully to fight him off.

Humphries and Faith moved frequently from 2015 to 2018. After Forney, they lived with Faith's grandparents in Wills Point, then with Humphries' girlfriend in The Colony, and then with family friends in Crandall. The sexual assaults continued

---

[1]    Faith is a pseudonym for the victim/complainant, who was a child at the time of the offense.

at each of these locations, though their frequency varied. Faith eventually moved out after her eighteenth birthday.

Faith later became concerned for the welfare of her younger half-sister, and in September 2020 decided to report the sexual assaults. Faith was interviewed by Forney Police Sergeant Mark Inmon and Crandall Police Detective Ivan Elizarraras on September 22, 2020. Sergeant Inmon and Detective Elizarraras interviewed Humphries the next day. Humphries denied the assaults or giving Faith herpes, though he acknowledged taking Faith to the emergency room and the herpes diagnosis. Forney Police arrested Humphries shortly thereafter.

## II. Procedural History

Humphries was indicted for the offense of sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE § 22.011(a)(2). The indictment included an enhancement based on a prior felony conviction for robbery. Two years later, a second grand jury indicted Humphries for first-degree sexual assault of a child, based on the enhancement Humphries engaged in sexual intercourse with a prohibited person (a descendant by blood). *See id.* §§ 22.011(a)(2), (f)(1)(B), 25.02(a)(1), (b)(2). This indictment also included the robbery enhancement. This second indictment was captioned "First Amended Indictment."

Humphries later moved to quash the First Amended Indictment, asserting it violated Article 28.10(c) of the Texas Code of Criminal Procedure and failed to give

him notice of the nature of the charged offense sufficient to prepare a defense. After a hearing, the trial court denied the motion to quash.

Humphries also filed several motions for continuance. Humphries asserted the State's late production of Faith's medical records and text message conversations with Humphries violated Article 39.14 of the Code of Criminal Procedure and did not provide counsel adequate time to investigate or provide an effective defense. The trial court held two hearings on these matters and received testimonial and documentary evidence but ultimately denied the motions for continuance.

Trial began on April 17, 2023. Shortly before voir dire, Humphries filed a motion to quash the jury panel. Humphries complained that a display sponsored by Lone Star CASA honoring Child Abuse Prevention Month was located outside near the entrance to the courthouse. Humphries argued this display would be seen by venire members and violated his right to a fair trial. The trial court considered the motion and ordered the displays removed but denied the motion to quash.

The State's case-in-chief consisted primarily of testimony from Sergeant Inmon and Faith. Sergeant Inmon testified regarding the initial interviews of Faith and Humphries in September 2020 and the subsequent investigation. Faith gave lengthy, detailed testimony regarding the alleged sexual assaults by Humphries. The State also offered testimony from Humphries' ex-wife and ex-girlfriend.

Humphries' case-in-chief included testimony from his step-sister, half-sister, and his mother, who testified they did not believe Faith's allegations and never saw

–4–

anything unusual between Humphries and Faith. Finally, Humphries testified in his defense and stated he never assaulted Faith. He contended Faith was retaliating against him because their relationship had soured after he refused to give her money for her wedding.

The jury found Humphries guilty of first-degree sexual assault of a child as charged in the indictment. Humphries pleaded true to the robbery enhancement. The jury assessed punishment at twenty-five years' imprisonment. The trial court entered judgment in accordance with the jury's verdict and denied Humphries' motion for new trial. Humphries timely appealed.

## STANDARDS OF REVIEW

We apply a de novo standard of review when reviewing a trial court's decision to deny a motion to quash an indictment. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Similarly, the sufficiency of an indictment is a question of law we review de novo. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009).

A trial court has broad discretion over the process of selecting a jury. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). Thus, an appellate court reviews a trial court's denial of a motion to quash a jury panel under an abuse of discretion standard. *Mendoza v. State*, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977).

We review a trial court's decision to grant or deny a continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). To establish reversible error based upon the denial of a motion for continuance, a

defendant must show both that the trial court erred in denying the motion and that the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010).

## ANALYSIS

In three issues, Humphries asserts: (1) the trial court erred in denying his motion to quash the indictment; (2) the trial court abused its discretion in denying his motion to quash the jury panel; and (3) the trial court abused its discretion and prejudiced Humphries when it denied his motions for continuance based on the State's late production of discovery. We address these issues in turn.

## I. The Trial Court Did Not Err in Denying the Motion to Quash the Indictment

In his first issue, Humphries asserts the trial court erred when it denied his motion to quash and exception to the substance of the indictment. We disagree.

### A. Article 28.10

The Code of Criminal Procedure provides the State with the opportunity to amend an indictment. TEX. CODE CRIM. PROC. arts. 28.10, 28.11; *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). Such amendments are made with notice to the defendant and on leave of the court. TEX. CODE. CRIM. PROC. arts 28.10, 28.11. Article 28.10(c) limits the extent to which the State may amend the indictment:

> An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

–6–

*Id.* art. 28.10(c). Humphries asserts this statute prohibited the amendment of his indictment.

However, Article 28.10 does not apply to reindictments, in contrast to amended indictments. *Flournoy v. State*, No. 05-95-01468-CR, 1997 WL 752562, at *4 (Tex. App.—Dallas Dec. 8, 1997, no pet.) (not designated for publication) (citing *Wisenbaker v. State*, 782 S.W.2d 534, 536 (Tex. App.—Houston [14th Dist.] 1989, no pet.)); *Garcia v. State*, No. 05-94-00836-CR, 1995 WL 379589, at *4 (Tex. App.—Dallas May 31, 1995, no pet.) (not designated for publication) (Article 28.10 not applicable to reindictment). Article 28.10 does not supplant the state's ability to obtain an amended indictment from a grand jury, but rather allows the state to correct technical deficiencies without requiring an additional appearance before the grand jury. *In re Pilkington*, No. 10-18-00295-CR, 2018 WL 5833588, at *1 (Tex. App.—Waco Nov. 7, 2018, orig. proceeding) (mem. op., not designated for publication) (collecting cases).

Here, an October 2020 grand jury indicted Humphries for the second-degree offense of sexual assault of a child. *See* TEX. PENAL CODE § 22.011(a)(2). The indictment tracked the language of the statute and alleged that, on or about January 1, 2015, Humphries intentionally or knowingly caused the penetration of Faith's sexual organ with his sexual organ. *See id.*

In November 2022, a separate grand jury indicted Humphries for the first-degree offense of sexual assault of a child. This indictment again tracked the

language of Section 22.001(a)(2) of the Penal Code, and again alleged that on or about January 1, 2015, Humphries intentionally or knowingly caused the penetration of Faith's sexual organ with his sexual organ. However, this indictment enhanced the punishment to a first-degree felony by including an allegation Faith was a person with whom the defendant was prohibited from engaging in sexual intercourse under Section 25.02 of the Penal Code. *See* TEX. PENAL CODE § 22.011(f)(1)(B) (enhancing offense to a first-degree felony if the victim is a person with whom the actor was prohibiting from engaging in sexual intercourse under Section 25.02); *id* § 25.02(a)(1) (prohibiting sexual intercourse between a person and his descendant by blood or adoption). This later indictment was filed on November 18, 2022, approximately four months before Humphries moved to quash the indictment and five months before trial.

This is not an instance where the State unilaterally attempted to amend the indictment; this was a reindictment by a second grand jury. Indeed, indictment by grand jury protects citizens against arbitrary accusations by the government. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000) (citing *King v. State*, 473 S.W.2d 43, 45 (Tex. Crim. App. 1971)). And, the pendency of one indictment does not prevent the grand jury from returning subsequent indictments charging the same transaction. *Whitehead v. State*, 286 S.W.2d 947, 948 (Tex. Crim. App. 1956).

We conclude Humphries was tried under a reindictment issued by a second grand jury rather than an amended indictment subject to Article 28.10(c). The

reindictment correctly tracked the Penal Code elements for the charge of sexual assault of a child, with the enhancement to a first-degree felony for engaging in sexual intercourse with a prohibited person (a descendant by blood). *See* Tex. Penal Code §§ 22.011(a)(2), (f)(1)(B), 25.02(a)(1), (b)(2); *Flournoy*, 1997 WL 752562, at *4 (rejecting defendant's due process complaint and holding Article 28.10 did not apply, where the reindictment made the same substantive allegations as the first indictment but added two enhancement paragraphs alleging prior felony convictions).

That the reindictment is captioned "First Amended Indictment" does not require an alternative conclusion. Generally, the caption is not part of the indictment, *see Stansbury v. State*, 82 S.W.2d 962, 964 (Tex. Crim. App. 1935), and this is not an instance where we must determine whether a charging instrument meets the constitutional definition of an "indictment." *See Jenkins v. State*, 592 S.W.3d 894, 900 (Tex. Crim. App. 2018); *see also Smith v. State*, 959 S.W.2d 1, 9 n.4 (Tex. App.—Waco 1997, pet. ref'd) (instrument designated as "amended indictment" did not signify that a second indictment was an "amended indictment"). And, that the reindictment uses the same cause number as the original is of no import. *See Pilkington*, 2018 WL 5833588, at *1 (second indictment bearing same cause number as first indictment was a reindictment).

We also reject Humphries' suggestion the grand jury was confused about what it was asked to consider or did not consider whether there was probable cause for

the particular offense. Again, the reindictment tracked the correct Penal Code provisions and apprised Humphries of the charges levied against him. And, appellate courts do not go behind the actions of the grand jury to determine the sufficiency or adequacy of the evidence to justify the return of an indictment. *Dean v. State*, 749 S.W.2d 80, 82 (Tex. Crim. App. 1988). When a legally constituted grand jury returns an indictment which is valid on its face, it is sufficient to call for a trial on the merits. *Id.*

We conclude Article 28.10(c) did not apply to the "First Amended Indictment," which was a reindictment. The trial court did not err in denying the motion to quash the indictment based on Article 28.10(c).

## B.    Sufficient notice

Humphries also asserted the reindictment did not provide fair notice of the charged offense sufficient to allow him to prepare a defense. We disagree.

The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense. *State v. Ross*, 573 S.W.3d 817, 820 (Tex. Crim. App. 2019). To provide fair notice, the charging instrument must convey sufficient information to allow the accused to prepare a defense. *Id.* An indictment that tracks the language of a statute usually gives sufficient notice. *Id*. However, the due-process requirement may be satisfied by means other than the charging instrument's language. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009). When a motion to quash is overruled, a defendant suffers no harm unless he did not,

in fact, receive notice of the State's theory against which he would have to defend. *Id.* (citing TEX. CODE CRIM. PROC. art. 21.19).

As discussed above, the reindictment here tracked the language of Texas Penal Code Sections 22.011(a)(2)(A) and 22.011(f)(1)(B) for the charge of sexual assault of a child (by means of penetrating the child's sexual organ with the defendant's sexual organ), with the enhancement to a first-degree felony for engaging in sexual intercourse with a prohibited person (a descendant by blood). *See* TEX. PENAL CODE §§ 22.011(a)(2), (f)(1)(B), 25.02(a)(1), (b)(2). The reindictment specifically alleged Humphries committed the acts upon his daughter on or about January 1, 2015, before presentment of the indictment. Nothing more was required. *Ross*, 573 S.W.3d at 820.

At the hearing on the motion to quash, Humphries argued the State should provide more detail as to the specific incidents the State intended to prove. However, Humphries did not provide the trial court or this Court with any authority to support such a requirement. Furthermore, the State is not required to prove the specific date the offense occurred when an "on or about" date is alleged within the indictment, but only that the offense occurred prior to the presentment of the indictment and within the limitations period. *Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex. Crim. App. 1997); *see* TEX. CODE CRIM. PROC. art. 21.02(6); *Klein v. State*, 273 S.W.3d 297, 303 n. 5 (Tex. Crim. App. 2008).

The day following the hearing on the motion to quash, the State e-mailed Humphries' counsel and provided detail about the act upon which the State was

proceeding to trial—specifying the location of the act, the month and year it occurred, where the act was discussed in discovery, and a summary of the act. Humphries' counsel later acknowledged the State provided enough information to allow him to focus the defense. Accordingly, Humphries had fair notice of the State's theories and has not shown harm. *Buxton v. State*, 526 S.W.3d 666, 683 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (defendant received sufficient notice of State's theory of liability such that he could prepare a defense, considering the indictment and pretrial filings by the State); *accord Olguin v. State*, No. 05-20-00811-CR, 2022 WL 4115492, at *8 (Tex. App.—Dallas, Sept. 9, 2022, no pet.) (not designated for publication).

### C. Conclusion regarding the motion to quash the indictment

Ultimately, we conclude the trial court did not err in denying the motion to quash the indictment. Article 28.10(c) does not apply, and Humphries had sufficient notice of the charged offense. We overrule Humphries' first issue.

## II. The Trial Court Did Not Abuse Its Discretion in Denying the Motion to Quash the Jury Panel

In his second issue, Humphries asserts the trial court abused its discretion in denying his motion to quash the jury panel based on their alleged exposure to child abuse prevention displays outside the court. We disagree.

A trial court has broad discretion over the process of selecting a jury. *Sells*, 121 S.W.3d at 755. Therefore, we review a trial court's denial of a motion to quash a jury panel for an abuse of discretion. *Mendoza*, 552 S.W.2d at 447.

–12–

The accused has a right to a fair trial by an impartial jury. U.S. CONST. amend VI; TEX. CONST. art. I, § 10. However, Texas courts require that a defendant show actual prejudice to prevail on a claim his right to a fair trial was violated by the presence of a visual displays on and around the court. *See Camarillo v. State*, No. 08-02-00318-CR, 2004 WL 100526, at *5 (Tex. App.—El Paso Jan. 22, 2004, no pet.) (not designated for publication); *Torres v. State*, 109 S.W.3d 602, 604-605 (Tex. App.—Fort Worth 2003, no pet.).

*Camarillo* involved similar facts. There, Camarillo complained the jury was improperly influenced by banners, cut-outs, and posters throughout the courthouse proclaiming the month as "Child Abuse Prevention Month" during Camarillo's prosecution for indecency with a child. *Camarillo*, 2004 WL 100526, at *5. However, Camarillo failed to provide evidence those posters and banners actually influenced the jury, and the El Paso Court of Appeals overruled Camarillo's complaint. *Id.* at *5-6.

Here, just before voir dire, Humphries filed a motion to quash the jury panel, complaining of a display honoring Child Abuse Prevention Month that was located outside near the entrance to the courthouse and sponsored by Lone Star CASA. The display consisted of signs and purple pinwheels. Humphries argued the display was in the direct path of the entering jury panel and promoted the public's duty to prevent child abuse and suggested sponsorship by county officials. Humphries argued this

was highly prejudicial to him as a defendant in a child sexual assault case and violated his right to a fair trial.

At the hearing, the trial court commented that some people probably saw the displays, while others probably had not. Out of an abundance of caution, the trial court had the displays removed, likely to prevent any potential prejudice to Humphries, but found that the display did not "rise[] to the effect of changing anything." The trial court also permitted Humphries to ask venire members about the displays if he so desired.

However, Humphries did not inquire about the displays during voir dire or whether any panel member was affected by such. Nor did Humphries present any evidence of actual influence upon the jury. Furthermore, during voir dire the court and counsel obtained assurances from the panel members on their ability to remain impartial. Ultimately, Humphries has not demonstrated any actual prejudice denying him of a fair trial. *Camarillo*, 2004 WL 100526, at *5-6; *Torres*, 109 S.W.3d at 604-605 (presence of anti-DWI posters in court lobby did not violate defendant's constitutional rights to a fair trial by an impartial jury, due process, and the due course of law, absent showing any of the jury members were prejudiced by the posters). Accordingly, the trial court did not abuse its discretion in denying Humphries' motion to quash the jury panel. We overrule Humphries' second issue.

**III.** **The Trial Court Did Not Abuse Its Discretion in Denying the Motions for Continuance**

In his third issue, Humphries contends the trial court abused its discretion in denying his motions for continuance based on the State's late production of discovery. We disagree.

**A.** **Motions for continuance**

A criminal action may be continued on the defendant's written motion showing sufficient cause. TEX. CODE CRIM. PROC. art. 29.03. Such motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance. *Id.* art. 29.08. The statutes require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009).

To show reversible error predicated on the denial of a pretrial motion for continuance, a defendant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 842-43 (Tex. Crim. App. 2010). The requirements to establish an abuse of discretion and prejudice apply when, as here, the appellant attempts to infuse the denial of a continuance with special constitutional significance. *Miller v. State*, No. 05-22-00307-CR, 2023 WL 4700634, at *4 (Tex. App.—Dallas July 24, 2023, no pet.) (mem. op., not designated for publication) (citing *Gonzales*, 304 S.W.3d at 842–43).

To show an abuse of discretion, an appellant must demonstrate "that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Gonzales*, 304 S.W.3d at 843. To show prejudice, the appellant should show with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had, such as by demonstrating what additional information, evidence, or witnesses the defense would have had available if the motion for delay had been granted. *Id.* at 842-43. "That counsel merely desired more time to prepare does not alone establish an abuse of discretion." *Miller*, 2023 WL 4700634, at *4 (quoting *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)).

We review the denial of a motion for continuance for an abuse of discretion, giving a wide degree of deference to the trial court. *Id.* at *3 (citing *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Gonzales*, 304 S.W.3d at 842; TEX. CODE. CRIM. PROC. art. 29.06(6) (sufficiency of a motion for continuance shall be addressed to "sound discretion" of court and "shall not be granted as matter of right")). We consider the circumstances of the case and the reasons given to the trial court at the time the request is made, and we bear in mind the general interest in the prompt and efficient administration of justice. *Id.* (citing *Rosales v. State*, 841 S.W.2d 368, 374 (Tex. Crim. App. 1992).

## B.     Application to the facts

Humphries complains the trial court abused its discretion in denying his motions for continuance where the State allegedly late-produced Faith's medical records and text messages between Humphries and Faith. Humphries contends this untimely production violated his rights to a fair trial and due process. The State contends Humphries did not preserve his complaint for appeal because he failed to file sworn motions in compliance with the Code of Criminal Procedure. We agree with the State.

Humphries filed two motions for continuance, neither of which were sworn as required. *See* TEX. CODE CRIM. PROC. art. 29.08. Humphries has not preserved his argument regarding the denial of the motions for continuance. *Anderson*, 301 S.W.3d at 279; *see also Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (refusing to recognize a "due process exception" requirement that motion for continuance be written and sworn).

Even if Humphries had preserved the issue, the record does not reflect the trial court abused its discretion or that Humphries was harmed, as we explain below.

### 1)     Medical records

In September 2020, the State provided Humphries eight pages of Faith's medical records related to the July 2015 emergency room visit. Those records reflect Faith visited the emergency room with complaints of vaginal pain. The records also indicate the presence of ulcers on Faith's genitals and a diagnosis of genital herpes.

–17–

On April 12, 2023—a few days before trial—the State received more complete medical records from the hospital's custodian and sent them to Humphries' counsel the same or next day. This set of documents contained the original records plus approximately thirty additional pages. Humphries argued those additional pages might provide exculpatory evidence regarding the diagnosis and origin of herpes and that he needed an opportunity to have an expert review and interpret the records.

However, most of the additional pages are blank medical forms. Many of the remaining pages repeat information provided in the original set of medical records provided to Humphries. The original records indicated the diagnosis of genital herpes, which tended to corroborate Faith's allegations about the sexual abuse. Humphries was aware of this medical diagnosis since September 2020 and provided no explanation why he could not have investigated this issue and sought expert advice long before trial. Humphries did not put on any additional evidence regarding what an expert would have concluded regarding the medical records and how that would have tended to exculpate Humphries. Humphries has not shown the case for delay was so convincing that no reasonable trial judge could have denied a continuance, nor has Humphries demonstrated harm. *See Gonzales*, 304 S.W.3d at 842-43; *see also Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995) (assertion that counsel did not have time to adequately investigate medical records for potential mitigating evidence without any showing of harm failed to establish an abuse of discretion).

### 2) Text messages

Humphries also moved for a continuance based on alleged late production of cell phone text messages between Faith and Humphries. Apparently, Faith e-mailed screenshots of the text messages to Detective Inmon shortly after Faith's 2020 police interview. However, Inmon testified he was unaware Faith had sent him the messages until he ran an email search at the State's request. This occurred around March 30, 2023, approximately two and a half weeks before trial. On March 30th, Inmon sent the text messages to the State, who provided them to Humphries' counsel the same day. Humphries attempted unsuccessfully to serve Faith with a subpoena duces tecum to obtain the entire text message exchange. The text messages were admitted at trial over Humphries' objection and tended to corroborate Faith's allegations of sexual abuse. Humphries argued he needed a continuance to investigate whether there were exculpatory messages or evidence on Faith's cell phone.

However, Humphries did not make a convincing case for delaying trial or produce any evidence of prejudice. The record reflects neither law enforcement nor the State had possession of Faith's cell phone. Faith merely showed the messages to investigators during her interview and later emailed them to Detective Inmon. Neither Humphries nor the State had any knowledge of whether the cell phone or any other text messages still existed at the time of the motion for continuance. Humphries' suggestions the cell phone would contain exculpatory evidence are mere

speculation. Furthermore, Humphries has not explained why any additional text message exchanges between he and Faith were not available on his own cell phone. And, the text messages were referenced during Faith's 2020 police interview—which was provided to Humphries—calling into question why Humphries did not investigate or seek the information sooner.

We conclude Humphries did not make such a convincing case for delay that a reasonable trial judge could not have concluded that fairness and scheduling outweighed the interest in delay. *See Gonzales*, 304 S.W.3d at 843. The record does not demonstrate the trial court abused its discretion in denying the motions for continuance or that Humphries was harmed. *See id*. at 842–43.

## C.    Article 39.14

In his discussion of the trial court's denial of his motions for continuance, Humphries also suggests the State's late production of discovery violated Article 39.14 and his related constitutional rights to a fair trial and due process. Humphries provides little discussion of Article 39.14, other than to claim the State's production of the additional medical records was untimely and prejudiced him by leaving him no opportunity to challenge the information in the records "used to bolster Faith's testimony." We question whether Humphries has adequately briefed and preserved the issue. *See* TEX. R. APP. P. 38.1. Even assuming he did, we disagree with his assertions.

Article 39.14 requires the State "as soon as practicable after receiving a timely request from the defendant" to produce "any designated documents, papers…or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state." TEX. CODE CRIM PROC. art. 39.14(a). Under this provision, disclosure must occur "as soon as practicable." *Id.*; *Watkins v. State*, 619 S.W.3d 265, 278 (Tex. Crim. App. 2021).

Violations of Article 39.14 are reviewed for non-constitutional error under Texas Rule of Appellate Procedure 44.2(b). *Amoles v. State*, No. 05-21-00556-CR, 2022 WL 3572691, at *10 (Tex. App.—Dallas Aug. 19, 2022, no pet.) (mem. op., not designated for publication) (citing *Sopko v. State*, 637 S.W.3d 252, 256 (Tex. App.—Fort Worth 2016, no pet.)). Rule 44.2(b) requires reviewing courts to disregard any non-constitutional error that does not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error (1) had a "substantial and injurious" effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect. *Tracy v. State*, 14 S.W.3d 820, 827 (Tex. App.—Dallas 2000, pet. ref'd). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *King v. State*, 666 S.W.3d 581, 585 (Tex. Crim. App. 2023).

Humphries has not established the State violated Article 39.14(a) regarding the medical records or text messages. As discussed above, the State turned over the documents immediately after receiving them from the medical records custodian and law enforcement. And, even assuming the State violated Article 39.14(a), the record does not demonstrate the requisite harm. *See* TEX. R. APP. P. 44.2(b). Again, long before the complained-of production, Humphries had notice of Faith's herpes diagnosis and the possible existence of additional text messages. Humphries did not put on evidence to show contrary medical diagnoses, and suggestions as to what additional text messages might exist are speculation.

Furthermore, there was significant evidence supporting the jury's verdict, the sufficiency of which Humphries has not attacked. Faith provided lengthy testimony regarding the sexual assaults perpetrated by Humphries, beginning when Faith was fifteen and continuing for several years. During this time, the assaults often occurred multiple times per week. Faith gave detailed, graphic testimony regarding several of these assaults, including the one that may have caused the herpes infection. The medical records and text messages supported Faith's allegations. Humphries has not explained how the alleged discovery violation had a "substantial and injurious" effect in determining the jury's verdict. Ultimately, Humphries has not established any violation of Article 39.14(a) or harm therefrom. *See* TEX. R. APP. P. 44.2(b).

### D. Conclusion regarding motions for continuance and Article 39.14(a)

Even if he had preserved the issue, Humphries has not demonstrated the trial court abused its discretion in denying his motions for continuance or any harm related thereto. And, to the extent Humphries argues violation of Article 39.14(a), he has not demonstrated an actual violation of the statute or that such a violation affected his substantial rights. Accordingly, we overrule Humphries' third issue.

## CONCLUSION

The trial court did not err in denying the motion to quash the First Amended Indictment. That document was a reindictment such that Article 28.10(c) does not apply, and Humphries had fair notice of the charges against him sufficient to prepare his defense. The trial court did not abuse its discretion in denying the motion to quash the jury panel; Humphries did not establish he suffered prejudice from child abuse prevention displays on courthouse grounds. The trial court did not abuse its discretion in denying the motions for continuance based on alleged untimely discovery from the State. Even if he had properly preserved the issue, Humphries did not make a convincing case for delaying trial or show with specificity how he was harmed by the absence of more preparation time. Finally, even if Humphries had established a violation of Article 39.14, he did not show the violation affected his substantial rights.

Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230543F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JASON CLAY HUMPHRIES, Appellant

No. 05-23-00543-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas

Trial Court Cause No. 20-90634-86-F.

Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of August, 2024.